SPECTOR, Chief Judge.
Appellant seeks reversal of a final judgment in favor of appellees Frank A. Bur- *843 ney and Nellie S. Burney, his wife, which was entered in a mortgage foreclosure suit,
The undisputed facts underlying this controversy reflect that appellee Racz-kowski owned a parcel of land which he mortgaged to appellant, Palatka Federal Savings and Loan Association. Subsequently, Raczkowski sold the mortgaged property to Emory Townsend Realty, Inc., which in turn sold a portion of the mortgaged property to the Burneys. The parent tract consisted of some fifteen acres of land on which there was situated a dwelling house. The parcel sold by Townsend to the Burneys consisted of two acres on which the dwelling house was situated.
No challenge is made to the validity of the mortgage given by Raczkowski to the appellant savings and loan association. Said mortgage had been duly recorded and remained unsatisfied at the time of the conveyance from Raczkowski to Townsend of the entire subject property, as well as when the conveyance from Townsend was made to the Burneys of the two acres on which the house was located. Accordingly, both conveyances were, as a matter of law, subject to the lien of the outstanding mortgage held by appellant.
In November 1967, the Burneys spoke with Mr. Emory Townsend of Townsend Realty about buying the two acres on which the house was located and learned that the asking price was $8,000 cash. This amount seemed agreeable to the Bur-neys who evidenced their intention to purchase the property as soon as they received the proceeds from an insurance policy on their deceased son, who had lost his life in the Viet Nam war. Townsend advised the Burneys at this time to return when they received the money and they would then formalize the transaction. In about a month, the Burneys contacted Townsend and told him the money was now available and reaffirmed their desire to purcháse the house. Townsend seized on the Burney’s eagerness and informed them that it was unnecessary for them to employ an attorney to represent them and that they could save money by using Townsend’s attorney.
On December 23, 1967, the Burneys, having ascertained the name of Townsend’s attorney, appeared at the office of the attorney without an appointment and met with him briefly. They introduced themselves and advised the attorney that they were buying some property from his client, Townsend, and that he was to do the legal work according to Townsend. The Burneys did not at that time employ the attorney, although they testified that they assumed that he was representing them because of the representation to them by Townsend. At that time, the Burneys were advised by the attorney that he had no knowledge of the transaction, that he did not know what particular property they were being sold by Townsend, and that he had no details as to the terms of the transaction. He took down their name and address and they departed. There is no evidence in the record that at this time the Burneys advised the attorney that they were about to pay the purchase money to Townsend directly nor is there any evidence that the attorney told the Burneys to go on and pay their money directly to Townsend before anything further was done. Nonetheless, the record does reflect that on the same day the Burneys appeared at Townsend’s office and gave him a cashier’s check for the entire purchase price of $8,000, receiving from Townsend only a receipt for the money. Apparently, Burney, through lack of education or understanding of the importance of the transaction, elected not to employ an attorney to represent his interests but rather relied on Townsend’s attorney to see that everything was done in a proper manner. Unfortunately, through the same lack of understanding or perhaps a misplaced reliance on Townsend’s integrity, Burney parted with his money without first determining that he would receive what he paid for.
The attorney selected by Townsend to prepare the deed of conveyance was one whose law firm did work for Palatka Fed *844 eral Savings on an item-by-item, case-by-case basis, but was not a regularly retained attorney of the appellant association. The deed conveying the land from Townsend to Burney which was prepared subsequent to the time that Burney had delivered the purchase money to Townsend recited that the conveyance was made subject to the outstanding mortgage held by Palatka Federal, which the grantor Townsend agreed to pay from the purchase price paid by Burney.
In due course, appellant filed this action to foreclose its mortgage against the entire parcel given as security by Raczkowski, which of course includes the house and two acres purportedly sold by Townsend to Burney. The foreclosure action was in the usual form, alleging a default in the note and mortgage by reason of nonpayment of the monthly payments. By their answer, the defendants Burney contended that the plaintiff was estopped from foreclosing the mortgage herein on their property by application of the doctrine of equitable estop-pel. They also contended by their answer that the attorney was an agent of the plaintiff Savings and Loan Association and that by reason thereof his knowledge that the property sold by Townsend to the Bur-neys was under lien was imputed to the association in that since the deed that the attorney prepared conveying the property from Townsend to Burney contained the recitation that Townsend assumed the obligation to pay the mortgage off, such recitation estopped the association from enforcing the mortgage against Burney.
The trial court held appellant’s mortgage to be valid as to the parcel of land retained by Townsend by reason of the conveyance to him from Raczkowski but held that appellant was equitably estopped from foreclosing its mortgage against the two-acre parcel with the house that was purchased by Burney.
In the case of Aetna Casualty and Surety Company v. Simpson, 128 So.2d 420, 425, 426 (Fla.App.1961), this court held the essential elements of equitable estoppel to be:
“. . . (1) words and admissions, or conduct, acts and acquiescence, or all combined causing another person to believe in the existence of a certain state of things; (2) in which the person so speaking, admitting, acting and acquiescing did so wilfully, culpably or negligently, and (3) by which such other person is or may be induced to act so as to change his own previous position injuriously. The parties sought to be es-topped must be guilty of conduct which amounts to a false representation or concealment of material facts at a time when he has knowledge, actual or constructive, of the real facts. . . . ”
The record in this case contains no evidence, either express or implied, from which it can be reasonably inferred that appellant Palatka Federal Savings, through any authorized agent or attorney, uttered any words, admissions, or engaged in any conduct which caused appellee Burney to believe in the existence of a certain state of things or that it committed any act in a willful, culpable or negligent manner. There is no evidence of any word or act on the part of Palatka Federal Savings, by any of its agents or attorneys, which can be said to have induced Burney to act in such manner as to change his own previous position injuriously. As a matter of fact, it is admitted that no agent or attorney authorized to speak for Palatka Federal Savings ever had any contact with Burney either before, during or after he purchased his land from Townsend and received a deed’of conveyance therefor.
The trial court’s final judgment is notably void of any evidence which could possibly support the doctrine of equitable estoppel. Vague reference is made by the trial court to the fact that the attorney who drafted the deed from Townsend to Burney knew of the existence of the Palatka Federal Savings mortgage because he made a notation in the deed reciting *845 that such mortgage would be paid by Townsend from the purchase money paid by Burney. We fail to understand how it can reasonably be said that such attorney’s knowledge of the existence of such mortgage could be sufficient to invoke the doctrine of equitable estoppel against Palatka Federal Savings’ right to foreclose its mortgage. Having accepted a deed disclosing the existence of such mortgage, Bur-ney is presumed to have known of this fact and trusted Townsend to have the mortgage cancelled with the proceeds of the purchase price which Burney was paying for the land conveyed to him. Secondly, the mere fact that the attorney who prepared the Townsend-Burney deed knew of the existence of the outstanding Palatka Federal Savings’ mortgage did not clothe him with authority to act as attorney for Palatka Federal Savings because he had been hired and was acting primarily for Townsend and incidentally for Burney. He was neither authorized nor directed by Palatka Federal Savings to represent its interest in the Townsend-Burney transaction because such interest did not need representation in view of the valid recorded mortgage held by Palatka Federal Savings against all of the land purchased by Townsend and being conveyed, in part, to Burney. The trial court’s decree that Palatka Federal Savings is equitably estopped from foreclosing its mortgage against Burney because to do so would result in the unjust enrichment of Palatka Federal Savings is without legal basis. This is a factor that would depend for its validity upon speculation and conjecture and would form no proper basis as an equitable bar to foreclosure.
In order to create an equitable es-toppel, it is generally necessary that the representations, acts, omissions, or conduct, of the party against whom the estoppel is being asserted were relied upon by him who asserts the estoppel. See 12 Fla.Jur., Estoppel and Waiver, § 56, and cases cited thereunder. Applying that principle to the case at bar and the facts revealed in the record, it is plain that the Burneys parted with their money before the appellant or any purported agent acting in its behalf did anything. Hence, it cannot be said that the Burneys paid their money in reliance upon what the appellant did. In other words, Burney did not change his position in reliance upon the conduct of the appellant or its purported agents. Section 57, ibid. The conduct of the appellant upon which the court found an equitable estoppel occurred over two months following the payment by Burney to Townsend of the purchase price.
For the reasons discussed above, it is our view that the judgment appealed must be reversed with directions that appellant’s mortgage be foreclosed against both parcels of land involved herein. However, we hold that the parcel retained by Townsend must be sold first and sale proceeds applied in payment of the mortgage debt. Since the evidence adduced before the trial court reveals that the security for the mortgage herein now has a value considerably in excess of the amount of indebtedness due under the mortgage, it is hoped that the sale of the acreage parcel retained by Townsend will yield a sufficient amount to discharge the mortgage. If that be the case, then the property purchased by the Bur-neys will be free and clear of appellant’s mortgage lien. However, if the sale proceeds of the Townsend parcel are not sufficient to pay in full the amount of the mortgage debt, then the Burney parcel will necessarily be required to be sold and so much of the proceeds as may be necessary should be applied in payment of the balance of the mortgage indebtedness. It well may be that the sale of the acreage, if it does not bring enough to discharge the mortgage in full, should certainly bring enough to nearly discharge the mortgage debt. In that event, the trial court should permit the Burneys an appropriate amount of time within which to arrange financing on their two acres and house so that they may pay off the balance left on the appellant’s mortgage after the sale of the *846 acreage so as to at least be able to salvage some of the money which in effect was stolen from them by Townsend. If, however, such refinancing cannot in the ultimate be arranged, then of necessity the Burney parcel must be sold to satisfy the balance due under the mortgage.
Reversed and remanded with directions to proceed in accordance with this opinion.
WIGGINTON and JOHNSON, JJ, concur.